# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CECYLE KLAPHAKE, | )<br>) |
| Plaintiff, | )<br>) |
| | ) Civil Action No. 17-1359 |
| v. | )<br>) Judge Cathy Bissoon |
| COLUMBIA GAS TRANSMISSION, LLC, *et al.*, | )<br>) Magistrate Judge Robert C. Mitchell |
| | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

This case was referred to United States Magistrate Judge Robert C. Mitchell for pretrial proceedings in accordance with the Magistrates Act, 28 U.S.C. §§ 636(b)(l)(A) and (B), and Rules 72.C, 72.D and 72.G of the Local Rules for Magistrate Judges.

On September 6, 2018, the Magistrate Judge issued a Report and Recommendation (the "Report," Doc. 36) recommending that Defendants' Motion for Judgment on the Pleadings (Doc. 25) be granted. Plaintiff Cecyle Klaphake timely filed objections (Doc. 37), to which Defendants timely responded (Doc. 38).

This Court conducted a *de novo* review of the issues raised by Plaintiff's objections, together with the Report. For the reasons that follow, the Court will adopt the Report's recommendation, as augmented herein, and grant Defendants' Motion for Judgment on the Pleadings.

## BACKGROUND

On September 12, 2017, Cecyle Klaphake ("Plaintiff") initiated a lawsuit in the Court of Common Pleas of Washington County, Pennsylvania, against Columbia Gas Transmission, LLC

("CGT"), Columbia Pipeline Group ("CPG"), and TransCanada Corporation ("TransCanada") (collectively, "Defendants"). Defendants removed this case to federal court on October 19, 2017 based on diversity of citizenship, pursuant to 28 U.S.C. §§ 1441 and 1446.

Plaintiff, the owner of the Klaphake Farm (the "Farm"), alleges that Defendants' plan to lay a replacement pipeline through her Farm and abandon their existing pipeline, as stated in their application to the Federal Energy Regulatory Commission ("FERC"), would violate the terms of a 1946 easement agreement pertaining to the Farm, for which the parties are the relevant successors-in-interest. (See generally Complaint, Doc. 1-2.) As relevant here, Plaintiff seeks a declaratory judgment that Defendants' obligations under the easement agreement include installing a gas tap on any new pipeline and removing rather than abandoning the existing pipeline (or paying Plaintiff for the privilege of abandonment). (Id.)

On October 6, 2017, prior to removal of this lawsuit, Defendant GCT brought a federal action for condemnation in this Court under the Natural Gas Act ("NGA"), 15 U.S.C. §§ 717-717z, to facilitate its replacement of its interstate pipeline (Line 1570). (See generally Civil Action No. 17-1297.) Plaintiff's Farm contains one of the parcels that Defendant sought to condemn[1] and Plaintiff is accordingly a named defendant in that lawsuit (the "Condemnation Action"). In the Condemnation Action, and in this action, the meaning and effect of GCT's certificate of public convenience and necessity, dated February 1, 2016, (Order Issuing Certificate and Granting Abandonment, 154 FERC ¶ 61,068, the "FERC Certificate," Doc. 26-4) as well as the meaning and effect of the 1946 easement agreement are disputed.

---

[1] In the Condemnation Action, the Court concluded that the route GCT sought to condemn for the new pipeline was not available as an optional route for the installation of a second pipeline in the 1946 easement agreement and thus that there was no overlap between the rights implicated in the condemnation of the new pipeline route and the rights conferred by the easement agreement.

The Report's analysis concludes that Defendants have no obligation to install a farm tap on Plaintiff's property with access to their new pipeline and that FERC's approval of abandonment pursuant to Section 7(b) of the NGA grants Defendants the right to cease service through the old pipeline, including the right to abandon the existing line in place.

Plaintiff objects to the Report on the following grounds: (1) the Report incorrectly interpreted the 1946 easement agreement as including a right to abandon the pipeline in place; and (2) the Report incorrectly concludes that the FERC Certificate and FERC's Section 7(b) abandonment approval provide authority for abandoning the pipeline on Plaintiff's land.

To address these objections, the Court must resolve whether the 1946 easement agreement and the FERC Certificate, taken together, require Defendants to install a farm tap on the new pipeline and whether they allow Defendants the right to abandon the existing pipeline on Plaintiff's Farm. For the reasons below, the Court concludes that Defendants are not required to install a farm tap on the new pipeline and may cease service through the existing pipeline, abandoning that line in the ground.

## LEGAL STANDARDS[2]

### I. Rights Conferred by an Easement Agreement

Under Pennsylvania law, "[i]t is well established that the same rules of construction that apply to contracts are applicable in the construction of easement grants." Zettlemoyer v.

---

[2] The standard for granting a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is identical to the standard for granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Revell v. Port Authority, 598 F.3d 128, 134 (3d Cir. 2010). In deciding whether to grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must take as true all of the well-pleaded facts in the complaint, Fowler v. UPMC Shadyside, 578 F.3d 201, 211 (3d Cir. 2009), and determine whether these facts raise a reasonable expectation that discovery will reveal the evidence necessary to prove each element of plaintiff's claims, Thompson v. Real Estate Mortgage Network, 748 F.3d 142, 147 (3d Cir. 2014).

Transcontinental Gas Pipeline Corp., 540 Pa. 337, 344 (1995). In the event that "the grant of an easement is ambiguous [the court] must determine if the grantee's asserted use is a reasonable and necessary use in relation to the original purpose of the grant and within the intention of the original parties to the grant." Id. at 345. The intention of the parties is determined by reference to the words the parties used in light of the circumstances known to the parties when the grant was made. Id. at 344.

The relevant circumstances here include Pennsylvania case law prior to 1946 concerning the corollary rights that owners of easements possess. For example, Pennsylvania case law construes such agreements "in favor of the grantee and [to] include[] whatever is reasonably necessary to an enjoyment of the thing granted." Hammond v. Hammond, 258 Pa. 51, 56 (1917); see also Clements v. Philadelphia Co., 184 Pa. 28, 31 (1898) (the right to lay pipes, as granted via eminent domain, necessarily includes the right to access the land for maintenance and repairs).[3] Conversely, when an easement grant is ambiguous or silent, rights that are unnecessary to the original purpose of the grant remain with the landowner. See Township of Piscataway v. Duke Energy, 488 F.3d 203, 211 (3d Cir. 2007) (applying analogous New Jersey law to conclude that there was a triable issue of fact as to whether removal of trees was reasonably necessary to the grant's explicit conferral of the right to inspect and maintain a pipeline).

### II. Abandonment Rights Conferred via the Natural Gas Act

Concerning abandonment of facilities and services, as stated in the Report, the Natural Gas Act provides that:

---

[3] This view is further supported by near-contemporaneous case law. E.g., Taylor v. Heffner, 359 Pa. 157, 162-63 (1948) (quoting the above-quoted language from Hammond approvingly).

> No natural-gas company shall abandon all or any portion of its facilities subject to the jurisdiction of the Commission, or any service rendered by means of such facilities, without the permission and approval of the Commission first had and obtained, after due hearing, and a finding by the Commission that the available supply of natural gas is depleted to the extent that the continuance of service is unwarranted, or that the present or future public convenience or necessity permit such abandonment.

15 U.S.C. § 717f(b). Clearly, by this language, FERC's permission and approval are prerequisites for abandonment of any portion of a pipeline subject to FERC's jurisdiction, including abandonment of any services rendered by a pipeline within FERC's jurisdiction. However, FERC's approval is not always sufficient for abandonment, as independent agreements with landowners are not covered by FERC's approval.[4]

**ANALYSIS**

**I.     The Parties' Rights under the 1946 Easement Agreement**

As to Plaintiff's argument that the easement agreement requires a farm tap on the new pipeline or the indefinite maintenance of the old farm tap, the language of the agreement clearly precludes such an argument. The totality of the agreement's discussion of a farm tap is the following sentence: "Tap to be installed on this line at point nearest the residence." (Exhibit 1 to Complaint, Doc. 1-2.) In context, "this line" refers to the pipelines mentioned in the agreement. Namely, it refers to one pipeline to be laid "along a line which has been surveyed for the state" and "a second line of pipe [that may be laid] alongside of the first line . . . subject to the same conditions." From the perspective of the parties in 1946, future pipelines, laid on different routes pursuant to subsequent eminent domain proceedings, are not "this line." There is no ambiguity in this provision. Defendants have no obligation under the 1946 easement agreement to install a farm tap on a line laid pursuant to a 2016 FERC Certificate.

---

[4] As discussed below, FERC has stated that its approvals do not adjudicate or supersede the rights of easement holders under state law.

As to the indefinite maintenance of the old farm tap, the agreement gives Defendants the right to "remove said line." If follows from Defendants' right to remove the existing pipeline that they have no obligation to indefinitely maintain the attached farm tap; the right to remove the farm tap is reasonably necessary to the right to remove the pipeline.

As to abandonment of the pipeline, Defendants' right to remove the pipeline also implies that the parties contemplated that service through the pipeline might cease at some point in time, and that it would be within Defendants' rights to cease such service without additional negotiation. Plaintiff argues that Defendants' only contractual option in the event that service ceases is to remove the line.

Plaintiff's argument is ultimately unpersuasive. For the reasons below, the Court concludes that the 1946 easement agreement includes a right to abandon the line in place. The easement grants "the right to lay a 20 inch pipe line and maintain, operate, repair and remove said line . . . with the rights of ingress, egress and regress to and from the same, the said Grantor to fully use and enjoy the said premises except for the purpose hereinbefore granted." If the agreement had not contained the option to remove the line, Plaintiff could reasonably argue that the agreement contemplated only the indefinite upkeep of the pipeline and the indefinite provision of a service. Yet, because the right to remove is textually included, the Court must consider the practical effect of the easement holder's exercise of its right to cease service. Cf. Lease v. Doll, 485 Pa. 615, 624-25 (1979) (considering practical consequences of strict limitations on right of way granted by easement and construing ambiguity in favor of the grantee to avoid harsh results). Here, abandonment's interference with the Farm, beyond the cessation of gas services via a farm tap, is not specified. As ceasing service through the pipeline is reasonably necessary to Defendants' exercise of their easement rights, the Court concludes that

doing so without undertaking costly efforts to dig the line up from the earth is a corollary right by virtue of Pennsylvania law. The Court, as a result, finds that the right to leave the line in the ground is included by implication in the 1946 easement agreement, as reasonably necessary to the easement-holder's right to cease service on the line.

## II. FERC Certificate Rights

Concerning the pipeline at issue here, FERC's approvals have consistently disclaimed any ability to adjudicate easement rights. (E.g., Order Issuing Certificate, 146 FERC ¶ 61,075, ¶ 7, Doc. 29-2 ("Columbia will retain its existing easements on property where pipe is proposed for abandonment in place"); id. at ¶ 15 ("Issues related to what rights Columbia may have to utilize the [servient estate owner's] property under the current easement and whether or not additional compensation or a new conveyance may be required for additional uses are beyond the jurisdiction of this Commission. Such issues may be addressed under state law in a court of competent jurisdiction."); see FERC Certificate ¶ 6 n.7 ("Columbia states that in locations where the new pipeline will offset the original Line 1570, it will abandon the existing pipeline in place, *unless otherwise agreed upon with the landowner*.") (emphasis added).)

As the Court has concluded that the 1946 easement agreement includes a right to abandon the existing pipeline in place, there is no conflict with FERC's approval of abandonment. Nor is there a conflict with FERC's indication that the parties' rights under any existing easement agreement must be adjudicated separately in a court of competent jurisdiction pursuant to state law. This Court has provided Plaintiff with the adjudication contemplated by FERC. To the extent that Plaintiff seeks to challenge the validity of the FERC Certificate and its approval of abandonment, the Report correctly concludes that this is not an appropriate forum to attack the FERC Certificate. (See Report 17-18.)

* * *

Accordingly, for the reasons stated above, the Report (Doc. 36), as augmented herein, is **ADOPTED** as the opinion of the District Court. Defendants' Motion for Judgment on the Pleadings (Doc. 25) is **GRANTED** and Plaintiff's Complaint is **DISMISSED**.

If Plaintiff wishes to file an amended complaint to address any of the deficiencies identified herein, she may do so on or before **October 26, 2018**. This will be Plaintiff's last and final opportunity to amend her complaint. See generally Taylor v. Pilewski, 2008 WL 4861446, *3 (W.D. Pa. Nov. 7, 2008) ("[the c]ourt need not provide endless opportunities" for amendment, especially where such opportunity already has been enjoyed); Houser v. Postmaster Gen. of U.S., 573 F. App'x 141 (3d Cir. 2014) (affirming dismissal without leave to amend, based on court's finding that "[it] would be inequitable to require [the d]efendant, who already once ha[d] exhaustively and successfully defended [the p]laintiff's grievances, to respond to a continuous stream of formal and informal attempted amendments"). If Plaintiff does not file an amended complaint by that date, this action will be dismissed with prejudice.

IT IS SO ORDERED.

October 16, 2018

s\Cathy Bissoon
Cathy Bissoon
United States District Judge

cc (via ECF email notification):

All Counsel of Record